UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHNNY H. THORNTON, Plaintiff** | DOCKET NUMBER: 19-12287 |
| VERSUS | SECTION: _____ |
| **COREY M. LYMOUS, THE CITY OF NEW ORLEANS, the Parents and Guardians of KS, a minor, the Parents and Guardians of HT, a minor, and the Parents and Guardians of Jamuel Sheppard, and JAMUEL SHEPPARD, Defendants** | MAGISTRATE: _____ |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

The plaintiff, Johnny H. Thornton, through undersigned counsel, respectfully says that:

**NATURE OF THE CASE**

1. This is a civil action arising out of the wrongful arrest of a Juvenile Counsellor Supervisor at the Orleans Parish Juvenile Justice Center / Youth Study Center (the "Center"), located at 1101 Milton Street in New Orleans, Louisiana. Plaintiff claims, inter alia, under federal law, that a New Orleans Police Sergeant, Corey Lymous, deprived him of due process, equal protection, and civil rights – and under state law – and committed torts against plaintiff, including defamation and false arrest. Plaintiff seeks to recover for his injuries, as well as for punitive damages and attorneys' fees.

2. Mr. Thornton also seeks to recover damages from several detainees of the Center, and those vicariously liable for these detainees conduct, because the detainees committed state law torts against plaintiff.

## PARTIES

3. The plaintiff, Johnny H. Thornton, is a natural person who domiciles in St. Tammany Parish, State of Louisiana.

4. The defendant, Corey M. Lymous, is a natural person, and, on information and belief, domiciles in Orleans Parish, State of Louisiana. Corey M. Lymous is and was during all times referred to in this complaint, a Sergeant with the New Orleans Police Department ("NOPD"), assigned as a detective of NOPD's Child Abuse Unit. NOPD, including its Child Abuse Unit, is a division of the City of New Orleans. During all times discussed in this complaint, Sgt. Lymous acted under color of state law by virtue of his position and authority as a New Orleans Police Department Sergeant. During all times discussed in this complaint, Sgt. Lymous acted in the course and scope of his employment with the City of New Orleans.

5. The defendant, the City of New Orleans (the "City"), is a political subdivision of the State of Louisiana. During all times discussed in this complaint, the City employed Sgt. Corey M. Lymous.

6. The Parents and Guardians of KS, a minor who was a detainee at the Center on August 25, 2018. On information and belief, the Parents and Guardians of KS domicile in Orleans Parish, State of Louisiana. Plaintiff believes that he will be able to learn the names of the Parents and Guardians of KS through discovery with the other defendants and will seek to amend his pleadings accordingly. Plaintiff expects KS to reach majority during the pendency of these proceedings and will seek to add him as a defendant at that time.

7. The Parents and Guardians of HT, a minor who was a detainee at the Center on August 25, 2018. On information and belief, the Parents and Guardians of HT domicile in Orleans Parish, State of Louisiana. Plaintiff believes that he will be able to learn the names of the Parents and Guardians of HT through discovery with the other defendants and will seek to amend his pleadings accordingly. HT may reach majority during the pendency of these proceedings. Should this occur, plaintiff may seek to add him as a defendant at that time.

8. The Parents and Guardians of Jamuel Sheppard from August 25-27, 2018. Mr. Sheppard who was a minor detained at the Center on August 25, 2018. On information and belief, the Parents and Guardians of Jamuel Sheppard on August 25-27, 2018 domicile in Orleans Parish, State of Louisiana. Plaintiff believes that he will be able to learn the names of the Parents and Guardians of Jamuel Sheppard on August 25-27, 2018 through discovery with the other defendants and will seek to amend his pleadings accordingly. Jamuel Sheppard reached majority after August 27, 2018.

9. The defendant, Jamuel Sheppard, is a natural person, and, on information and belief, domiciles in Orleans Parish, State of Louisiana. On August 25-27, 2018, he was a minor detained at the Center.

## JURISDICTION, AND VENUE

10. Plaintiff brings this action against defendants to redress the deprivation of rights the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and Louisiana state law. This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

11. Plaintiff invokes this Court's supplemental jurisdiction over his claims against defendants for Louisiana state law violations, pursuant to 28 U.S.C. § 1367, as such claims form part of the same case or controversy as their claims arising under federal law.

12. Venue is proper in this District, under 28 U.S.C. § 1391(b)(1) and (2) because most of, if not all, the defendants reside in this District and a substantial part of the events or omissions giving rise to the claim occurred within this District.

**FACTS**

13. Johnny H. Thornton worked in corrections throughout the State of Louisiana for over thirty years. Throughout his career, Mr. Thornton was very well trained and experienced in dealing with and restraining prisoners, in particularly juveniles, in a professional and safe manner. He had a very good reputation as an effective corrections officer and had a very good reputation in his community as a law-abiding citizen.

14. In April of 2017, plaintiff began working as a Juvenile Counsellor Supervisor at the Center.

15. Officers of the NOPD arrested KS, HT, and Jamuel Sheppard on separate occasions prior to August 25, 2018. On information and belief, the charges that NOPD officers arrested each for involved separate and multiple crimes of violence, such as attempted murder and aggravated battery. On information and belief, the NOPD officers who arrested KS, HT, and Mr. Sheppard correctly determined there was probable cause that these detainees had commit acts of violence, including discharging a firearm at other human beings and physically attacking other human beings.

16. On information and belief, the NOPD officers involved in the arrest KS, HT, and Jamuel Sheppard made reports and other writings describing the reasons for the arrests of these

detainees that other NOPD officers, including Sgt. Lymous, had access to read and review. On information and belief, these reports and other writings demonstrate the violent propensity of KS, HT, and Mr. Sheppard.

17. On information and belief, judges at the Orleans Parish Juvenile Court ordered that the Center detain KS, HT, and Jamuel Sheppard while they awaited adjudication of their respective delinquency proceedings stemming from their arrests. Accordingly, the Center detained KS, HT, and Mr. Sheppard.

18. On August 25, 2018 at approximately 8:30 p.m., KS was in the common area of the Center known as "Pelican B." KS refused to obey the command one of the Center's staff member to return to his room. Mr. Thornton entered the common area along with another staff member. The three staff members directed KS to return to his room but the detainee did not comply. Mr. Thornton placed restrain KS's arms using his arms from behind KS in a maneuver that corrections officers commonly use called an "upper torso." Plaintiff walked backwards with KS to bring him to his room using this upper torso maneuver while the other two staff members also walked towards KS's room. During this time, two additional staff members entered the common area. As they crossed the common area, KS resisted Mr. Thornton and tried to use his right leg to trip Mr. Thornton. The other staff members tried to grab each of KS's legs. KS continued to struggle against all three staff members and twisted his body causing him to fall to the ground with Mr. Thornton on top of him. All five staff members present worked together to hold KS down while the placed mechanical restraints on his arms and legs. They lifted KS up to his feet and walked him

to his room. Mr. Thornton left the room without further incident and other staff later removed KS's mechanical restraints.

19. The Center's video recording system captured nearly all this incident with KS with the exception of when KS was in his room. Mr. Thornton and, on information and belief, the other staff members separately wrote contemporaneous, statements regarding the incident with KS. All statements indicated that Mr. Thornton's actions and use of force were appropriate for the situation.

20. On August 25, 2018, HT got into a fistfight with another detainee, CH, in an area of the Center known as "Pelican A." Staff members were trying to stop the two youths from fighting, to no avail. Mr. Thornton arrived and restrained CH while other staff dealt with HT. Plaintiff brought CH to his room and then returned to find HT refusing to return to his room. Mr. Thornton applied the "upper torso" maneuver to HT and escorted him to his room while other staff members accompanied them. Plaintiff released HT when they arrived at the detainee's room. HT verbally threatened Mr. Thornton, grabbed an ice pack, and tried to tear it open to throw the contents at plaintiff. Mr. Thornton then physically retrained HT and instructed the other staff to place HT in mechanical restraints, which they did. Later, they removed the mechanical restraints.

21. The video recorded plaintiff escorting HT to his room while followed by other staff is. Most of what occurred inside of HT's room does not appear in the video, but it does show that other staff members were able to witness Mr. Thornton's actions inside the room. Mr. Thornton and, on information and belief, the other staff members separately wrote

contemporaneous, statements regarding the incident with HT. All statements indicated that Mr. Thornton's actions and use of force were appropriate for the situation.

22. On August 25, 2018 at approximately 6:15 p.m., Jamuel Sheppard was in an area of the Center called "Saints B" threatening several staff members. Mr. Sheppard went to his room and retrieved a white cup containing a liquid that he claimed was bleach. The detainee threatened to throw the bleach on the staff members. Through the Center's radio system, the staff called Mr. Thornton to the area to assist. A staff member was trying to physically restrain Mr. Sheppard when plaintiff arrived. As plaintiff approached to assist, Mr. Sheppard threw the liquid in the cup towards Mr. Thornton. The staff member attempting to restrain Mr. Sheppard tried to bring him to his room, but the detainee resisted and was able to prevent her from doing so. Mr. Thornton then restrained Mr. Sheppard and brought him inside of the detainee's room. Other staff closed the door to the room and had to forcibly take another detainee into that person's room. Mr. Sheppard tried several times to punch Mr. Thornton in the face so plaintiff restrained him using the upper torso maneuver and called for the other staff to place mechanical restraints on Mr. Sheppard. Later they removed the restraints.

23. Video shows what occurred outside of Mr. Sheppard's room, but not what occurred inside. The video does show that other staff members were in position to see much of Mr. Thornton's actions in the room. Mr. Thornton and, on information and belief, the other staff members separately wrote contemporaneous, statements regarding the incident with Mr. Sheppard. All statements indicated that Mr. Thornton's actions and use of force were appropriate for the situation.

24. Based upon information and belief, on or about August 25, 2018, KS falsely stated that plaintiff choked and punched KS. KS made these false claims to KS's grandmother, to Dischell Williams, the Superintendent of the Center, and probably to others.

25. Based upon information and belief, on or about August 25, 2018, HT falsely claimed that Mr. Thornton slammed his head to the ground repeatedly and choked him. HT made these false claims to Ms. Williams and probably to others.

26. Based upon information and belief, on or about August 25, 2018, Jamuel Sheppard falsely claimed that plaintiff used profanity, threatened, and punched him. Mr. Sheppard made these false claims to Ms. Williams and probably to others.

27. On or about August 26, 2018, Sergeant Corey Lymous ordered an NOPD detective who worked under his authority with NOPD's Child Abuse Unit, Tonisha Goodwin to investigate KS, HT, and Mr. Sheppard's complaints about Mr. Thornton. Det. Goodwin arrived at the Center on that date and spoke with Ms. Williams. Ms. Williams related what the three detainees reported to her, provided the staff members' written statements regarding the incident, and allowed the detective to review the video of the incidents. Ms. Goodwin notified Sgt. Lymous of all she learned.

28. On or about August 27, 2018, Sgt. Lymous reviewed the staff members' written statements and reviewed the video regarding the three incidents. He also interviewed the three detainees and Mr. Thornton.

29. On or about August 27, 2018, KS falsely told Sgt. Lymous that KS was just "playing around" with the other staff when he refused to return to his cell. KS falsely stated that Mr. Thornton choked him, used profanity, purposefully slammed him to the ground, grabbed

and squeezed his penis approximately six times, and punched him. KS further falsely claimed that Mr. Thornton pushed his head into the metal frame of his bed.

30. Sgt. Lymous was or became aware of the falsity of KS's claims as the video clearly showed that:

    a. KS was physically resisting the other staff members efforts to make him return to his room, rather than "playing around";

    b. KS's resistance caused him to go to the ground rather than Mr. Thornton slamming him to the ground;

    c. Mr. Thornton never grabbed or squeezed KS's penis any times; and

    d. Plaintiff never punched or choked the detainee.

31. Sgt. Lymous was or became aware of additional compelling reasons showing the falsity of KS's claims, including the statements of Mr. Thornton and all the other staff members that contradicted KS, as well as the violent and criminal history of KS.

32. On or about August 27, 2018, HT falsely told Sgt. Lymous that Mr. Thornton repeatedly forearmed HT upon the side of his head and ear, struck him, and used profanity.

33. Sgt. Lymous was or became aware of compelling reasons showing the falsity of HT's claims, including the statements of Mr. Thornton and all the other staff members that contradicted HT, as well as the violent and criminal history of HT.

34. On or about August 27, 2018, Jamuel Sheppard falsely told Sgt. Lymous that Mr. Thornton punched him several times.

35. Sgt. Lymous was or became aware of compelling reasons showing the falsity of Jamuel Sheppard's claims, including the statements of Mr. Thornton and all the other staff

members that contradicted Mr. Sheppard, as well as the violent and criminal history of Mr. Sheppard.

36. On information and belief, Sgt. Lymous did not believe that plaintiff had committed any crime and stated so to others. Sgt. Lymous had objective and nearly perfectly reliable evidence in the video that what KS claimed about Mr. Thornton was false.

37. Nonetheless, Sgt. Lymous executed an Affidavit for Arrest Warrant on or about August 31, 2018, certifying under oath that there was probably cause to believe that plaintiff committed one count of a felony violation of La. Rev. Stat. §14:93.2.3 SECOND DEGREE CRUELTY TO JUVENILES, one count of a misdemeanor violation of La. Rev. Stat. §14:35 SIMPLE BATTERY, and one count of a felony violation of La. Rev. Stat. §14:134 MALFEASANCE IN OFFICE. This Affidavit falsely claims that the video of the incident with KS shows that "[o]ne of Thornton's movements was consistent with a jab punch." Sgt. Lymous also intentionally omitted other facts that he learned from the video that showed beyond doubt that KS's accusations were false. Sgt. Lymous also intentionally omitted the extensive criminal and violent histories of the juveniles in his Affidavit.

38. On or about August 31, 2018, the Hon. Magistrate Judge Harry Cantrell of the Criminal District Court for the Parish of Orleans, State of Louisiana, issued an arrest warrant based on Sgt. Lymous's Affidavit.

39. Sgt. Lymous contacted Mr. Thornton and advised him of his warrant and Mr. Thornton voluntarily surrendered himself to Sgt. Lymous on or about September 6, 2018 at NOPD's headquarters at 715 South Broad Street, New Orleans, Louisiana. Sgt. Lymous escorted plaintiff to the Orleans Parish Justice Center, Central Lock Up for booking.

40. After being booked, Orleans Parish Criminal Sheriff Deputies placed Mr. Thornton in a cell and made him change into an orange prisoner jumpsuit. The deputies brought him to the Magistrate Court Criminal District Court for the Parish of Orleans, State of Louisiana. That court set his bond. Plaintiff's family paid a commercial surety to post his bond for his release from jail.

41. The Times-Picayune/NOLA.com, the New Orleans Advocate, and other media outlets ran stories about Mr. Thornton's arrest.

42. The Center terminated the plaintiff's employment because of his arrest.

43. Sgt. Lymous presented his report, his Affidavit, and other documents to the Orleans Parish District Attorney.

44. Mr. Thornton hired an attorney to assist with the defense of the criminal charges and to appeal the Center's termination through the Civil Service Commission.

45. The Orleans Parish District Attorney presented this case to a Grand Jury of the Orleans Parish Criminal District Court. On or about February 7, 2019 the Grand Jury returned a no true bill. The Orleans Parish District Attorney has refused to proceed with any charges against Mr. Thornton.

46. The wrongful actions of KS, HT, Jamuel Sheppard, and Sgt. Corey Lymous have caused Mr. Thornton:

   a. Mental and emotional distress;

   b. Damage to his reputation in the community;

   c. Past and future lost wages; and

   d. Past and future lost earning capacity.

## COUNT I – FEDERAL DUE PROCESS

47. Plaintiff incorporates the allegations set forth in all other paragraphs of this complaint.

48. Sgt. Corey Lymous violated the rights that the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution guarantee to Johnny H. Thornton.

49. Sgt. Lymous acted under color of state law and custom when he deprived Mr. Thornton of his federal rights to due process. Plaintiff asserts a claim against this defendant under Title 42 of the United States Code §1983.

50. Sgt. Lymous acted in both his individual and official capacities when depriving plaintiff t of his civil rights. Plaintiff sues him in Sgt. Lymous's individual and official capacities.

51. The plaintiff is entitled to and demands recovery of all damages proximately-caused by the deprivation of his federal constitutional rights from Sgt. Lymous. He identifies these damages, non-exclusively, as follows: loss of freedom; incurring of attorneys' fees in the state proceedings; damage to reputation; past, present and future, emotional upset and distress, and other psychological sequelae; together with all other damages shown at trial.

52. Sgt. Lymous acted with willful and wanton indifference to and deliberate disregard for the plaintiff's constitutional rights, so plaintiff is entitled to and demands punitive damages.

53. Pursuant Title 42 of the United States Code §1988(b), plaintiff is entitled to and demands recovery of attorney's fees and costs from Sgt. Lymous.

## COUNT II – STATE DUE PROCESS

54. Plaintiff incorporates the allegations set forth in all other paragraphs of this complaint.

55. Sgt. Corey Lymous actions violated rights Article 1, §§ 2, 3, 5, 7, 12, and 18 of the Louisiana Constitution guarantee to Johnny H. Thornton.

56. The City is vicariously liable to plaintiff for Sgt. Lymous's violations of plaintiff's state constitutional rights.

57. The plaintiff is entitled to and demands recovery of all damages proximately-caused by the deprivation of his state constitutional rights from Sgt. Lymous and the City. He identifies these damages, non-exclusively, as follows: loss of freedom; incurring of attorneys' fees in the state proceedings; damage to reputation; past, present and future, emotional upset and distress, and other psychological sequelae; together with all other damages shown at trial.

### COUNT III – FALSE ARREST/BATTERY

58. Plaintiff incorporates the allegations set forth in all other paragraphs of this complaint.

59. Sgt. Corey Lymous intentionally detained Johnny H. Thornton without lawful justification.

60. Plaintiff has an action for damages resulting from Sgt. Lymous intentionally detaining Mr. Thornton under La. C.C. Art. 2315.

61. The City is vicariously liable under La. C.C. Art. 2317 to plaintiff for Sgt. Lymous's false arrest of and battery to Mr. Thornton.

62. The plaintiff is entitled to and demands recovery of all damages proximately-caused by the false arrest of and battery to Mr. Thornton against Sgt. Lymous and the City. He identifies these damages, non-exclusively, as follows: loss of freedom; incurring of attorneys' fees in the state proceedings; damage to reputation; past, present and future, emotional upset and distress, and other psychological sequelae; together with all other damages shown at trial.

## COUNT IV - DEFAMATION

63. Plaintiff incorporates the allegations set forth in all other paragraphs of this complaint.

64. KS, HT, Jamuel Sheppard, and Sgt. Corey Lymous made false and defamatory statements concerning Johnny H. Thornton.

65. KS, HT, and Jamuel Sheppard made their false statements, without privilege, to the others, including but not limited to each other, KS's grandmother, Dischell Williams, and Sgt. Lymous.

66. Sgt. Lymous made false statements, without privilege, to the others, including but not limited to the Hon. Magistrate Judge Harry Cantrell.

67. KS, HT, Jamuel Sheppard, and Sgt. Corey Lymous made these false statements intentionally, or in the most favorable light to them, grossly negligently.

68. KS, HT, Jamuel Sheppard, and Sgt. Corey Lymous made these statements knowing they would likely result in the arrest of Mr. Thornton and the publication of this arrest in the news media.

69. KS, HT, Jamuel Sheppard, and Sgt. Corey Lymous's statements resulted in damage to Mr. Thornton, including making others in the community falsely believe that plaintiff was a violent, child abusing, criminal.

70. The City of New Orleans is vicariously liable under La. C.C. Art. 2317 to plaintiff for Sgt. Lymous's false and defamatory statements about Mr. Thornton.

71. The Parents and Guardians of KS are vicariously liable under La. C.C. Art. 2317 to plaintiff for KS's false and defamatory statements about plaintiff.

72. The Parents and Guardians of HT are vicariously liable under La. C.C. Art. 2317 to plaintiff for HT's false and defamatory statements about plaintiff.

73. The Parents and Guardians of Mr. Sheppard are vicariously liable under La. C.C. Art. 2317 to plaintiff for Mr. Sheppard's false and defamatory statements about plaintiff.

74. The plaintiff is entitled to and demands recovery of all damages proximately-caused by the defamation to Mr. Thornton under La. C.C. Art. 2315 against the Parents and Guardians of KS, the Parents and Guardians of HT, the Parents and Guardians of Jamuel Sheppard on August 25, 2018, Mr. Sheppard, Sgt. Lymous, and the City. Mr. Thornton identifies these damages, non-exclusively, as follows: loss of freedom; incurring of attorneys' fees in the state proceedings; damage to reputation; past, present and future, emotional upset and distress, and other psychological sequelae; together with all other damages shown at trial.

### COUNT V – ASSAULT AND BATTERY

75. Plaintiff incorporates the allegations set forth in all other paragraphs of this complaint.

76. KS, HT, and Jamuel Sheppard engaged in assaults and batteries against Johnny H. Thornton and the other staff members that caused Mr. Thornton to have to use physical force to restrain these detainees.

77. Plaintiff has an action for damages resulting from KS, HT, and Mr. Sheppard's assaults and batteries under La. C.C. Art. 2315.

78. The Parents and Guardians of KS are vicariously liable under La. C.C. Art. 2317 to plaintiff for KS's assaults and batteries.

79. The Parents and Guardians of HT are vicariously liable under La. C.C. Art. 2317 to plaintiff for HT's assaults and batteries.

80. The Parents and Guardians of Mr. Sheppard are vicariously liable under La. C.C. Art. 2317 to plaintiff for Mr. Sheppard's assaults and batteries.

81. The plaintiff is entitled to and demands recovery of all damages proximately-caused by the assaults and batteries on Mr. Thornton and the other staff members against the Parents and Guardians of KS, the Parents and Guardians of HT, the Parents and Guardians of Jamuel Sheppard on August 25-27, 2018, and Mr. Sheppard. He identifies these damages, non-exclusively, as follows: loss of freedom; incurring of attorneys' fees in the state proceedings; damage to reputation; past, present and future, emotional upset and distress, and other psychological sequelae; together with all other damages shown at trial.

## ON ALL COUNTS

82. Plaintiff incorporates the allegations set forth in all other paragraphs of this complaint.

83. Plaintiff strictly reserves the right to amend and supplement this complaint as necessary concerning damages.

84. Plaintiff strictly reserves the right to amend and supplement this complaint as necessary concerning facts and parties.

85. To the extent that the legal or factual basis of plaintiff's claims may be mutually exclusive, plaintiff pleads them in the alternative under Rule 8 of the Federal Rules of Civil Procedure.

86. Plaintiff requests a jury trial on all issues, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**WHEREFORE**, the plaintiff, Johnny H. Thornton, prays that the Court issue summons to Sgt. Corey M. Lymous, the City of New Orleans, the Parents and Guardians of KS, the Parents

and Guardians of HT, the Parents and Guardians of Jamuel Sheppard on August 25-27, 2018, and Jamuel Sheppard, instructing the defendants to answer this complaint.

Under COUNT ONE – FEDERAL DUE PROCESS, plaintiff prays that, after due proceedings, the Court render judgment in favor of plaintiff, Johnny H. Thornton and against the defendant, Sgt. Corey Lymous, for monetary relief in an amount of that is reasonable in the premises with judicial interest thereon from date of judicial demand until paid; a monetary amount for attorneys' fees on the deprivation of constitutional rights; and for all costs of these proceedings with all expert fees taxed as costs of court. He further prays for judgment against Sgt. Corey Lymous for a monetary amount in punitive damages with judicial interest thereon from date of judicial demand until paid.

Under COUNT TWO – STATE DUE PROCESS, plaintiff prays that, after due proceedings, the Court render judgment in favor of plaintiff, Johnny H. Thornton, and against the defendants, Sgt. Corey Lymous and the City of New Orleans, in solido, for monetary relief in an amount of that is reasonable in the premises with judicial interest thereon from date of judicial demand until paid, and for all costs of these proceedings with all expert fees taxed as costs of court.

Under COUNT THREE – STATE FALSE ARREST, plaintiff prays that, after due proceedings, the Court render judgment in favor of plaintiff, Johnny H. Thornton, and against the defendants, Sgt. Corey Lymous and the City of New Orleans, in solido, for monetary relief in an amount of that is reasonable in the premises with judicial interest thereon from date of judicial demand until paid, and for all costs of these proceedings with all expert fees taxed as costs of court.

Under COUNT FOUR – DEFAMATION, plaintiff prays that, after due proceedings, the Court render judgment in favor of plaintiff, Johnny H. Thornton, and against the defendants, he Parents and Guardians of KS, the Parents and Guardians of HT, the Parents and Guardians of Jamuel

Sheppard on August 25, 2018, Jamuel Sheppard, Sgt. Corey Lymous, and the City of New Orleans, in solido, for monetary relief in an amount of that is reasonable in the premises with judicial interest thereon from date of judicial demand until paid, and for all costs of these proceedings with all expert fees taxed as costs of court.

Under COUNT FIVE – ASSAULT AND BATTERY, plaintiff prays that, after due proceedings, the Court render judgment in favor of plaintiff, Johnny H. Thornton, and against the defendants, he Parents and Guardians of KS, the Parents and Guardians of HT, the Parents and Guardians of Jamuel Sheppard on August 25, 2018, and Jamuel Sheppard, in solido, for monetary relief in an amount of that is reasonable in the premises with judicial interest thereon from date of judicial demand until paid, and for all costs of these proceedings with all expert fees taxed as costs of court.

    Respectfully Submitted:

    Attorneys for Johnny T. Thornton, Plaintiff

    _____
    JOHN A. VENEZIA (#23963)
    jav@venezialaw.net
    JULIE O'SHESKY (#36245)
    jeo@venezialaw.net
    Venezia & Associates (APLC)
    757 St. Charles Avenue
    Suite 302
    New Orleans, Louisiana 70130
    (504) 486-3910 voice
    (504) 486-3913 fax
    -and-
    MICHAEL L. CAPDEBOSCQ (#26232)
    mlcapdeboscq@yahoo.com
    710 E Boston Street
    Suite B
    Covington LA 70433
    (985) 517-1213

**PLEASE ISSUE SUMMONS TO:**

Sgt. Corey M. Lymous, NOPD, wherever found

The City of New Orleans, through the City Attorney, Sunni J. LeBeouf, wherever found

The Parents and Guardians of KS, wherever found

The Parents and Guardians of HT, wherever found

The Parents and Guardians of Jamuel Sheppard on August 25-27, 2018, wherever found

Jamuel Sheppard, wherever found