# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHNNY THORNTON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-12287** |
| **COREY LYMOUS, et al** | **SECTION: "G"(3)** |

## ORDER AND REASONS

In this litigation, Plaintiff Johnny Thornton ("Plaintiff") brings several claims against New Orleans Police Sergeant Corey Lymous ("Sergeant Lymous") and the City of New Orleans (the "City") (collectively, "Defendants") under both federal and state law.[1] Plaintiff claims that Sergeant Lymous's allegedly false affidavit caused Plaintiff to be arrested for actions taken while working as a juvenile counselor at the Orleans Parish Juvenile Justice Center ("Juvenile Justice Center").[2] Pending before the Court is Defendants' second motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion to dismiss.

---

[1] Rec. Doc. 23. Plaintiff also brings Louisiana state law claims against Kylee Sexton, the Parents and Guardians of Kylee Sexton, the Parents and Guardians of HT, Jamuel Sheppard, and the Parents and Guardians of Jamuel Sheppard. *Id.*

[2] *Id.* at 12–13.

[3] Rec. Doc. 25. Sergeant Lymous brings the motion in his individual and official capacity as a New Orleans police officer.

# I. Background

## A. *Factual Background*

Plaintiff alleges that he was employed by the Juvenile Justice Center as a juvenile counselor supervisor.[4] The present litigation arises out of three separate incidents at the Juvenile Justice Center occurring on August 25, 2018, during which Plaintiff admittedly restrained three detainees.[5] The three detainees were Kylee Sexton ("Sexton"), HT (a minor whose name is confidential), and Jamuel Sheppard ("Sheppard").[6] Each detainee accused Plaintiff of employing excessive force and committing other unlawful acts against them on August 25, 2018.[7]

### 1. Plaintiff's Encounter with Kylee Sexton

In the Amended Complaint, Plaintiff describes in detail the encounter with Sexton on August 25, 2018.[8] On that day, Sexton allegedly was in an area of the Juvenile Justice Center commonly referred to as "Pelican B."[9] One of the Juvenile Justice Center's staff members apparently ordered Sexton to leave Pelican B and return to Sexton's personal room.[10] But Sexton allegedly disobeyed the staff member's command to leave Pelican B and return to his personal room.[11] Plaintiff allegedly responded by employing an "upper torso" maneuver on Sexton to bring

---

[4] Rec. Doc. 23 at 4.

[5] *See id.*

[6] *See id.*

[7] *See id.*

[8] *Id.* at 5.

[9] *Id.*

[10] *Id.*

[11] *Id.*

Sexton back to his personal room.[12]

Yet, according to Plaintiff, Sexton caused himself to fall to the ground, which, in turn, caused Plaintiff to fall on top of Sexton's body.[13] Five staff members allegedly worked together to restrain Sexton to place mechanical restraints on his body.[14] The five staff members, including Plaintiff, allegedly then lifted Sexton up and escorted Sexton to his personal room.[15] Plaintiff states that he departed the scene once Sexton was placed in his personal room.[16] The other staff members allegedly remained in Sexton's personal room to remove the mechanical restraints on Sexton's body.[17]

Plaintiff admits that the Juvenile Justice Center's video footage displays only what occurred outside of Sexton's personal room—not what occurred inside of the room.[18] Plaintiff maintains, however, that the video footage displays other staff members in a position to observe Plaintiff's actions while inside of Sexton's personal room.[19] The staff members allegedly each wrote statements describing Plaintiff's actions during the entire encounter with Sexton.[20] Plaintiff asserts that the staff members' statements indicated that Plaintiff's actions were appropriate for

---

[12] *Id.* at 5–6.

[13] *Id.* at 6.

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

the situation.[21]

Yet Sexton allegedly reported to several people—including Sexton's grandmother, the Juvenile Justice Center's Superintendent (the "Superintendent"), and Sergeant Lymous—a completely different version of how the encounter on August 25, 2018, transpired.[22] For instance, on August 25, 2018, Sexton allegedly told the Superintendent that Plaintiff choked and punched him.[23] A few days later, on August 27, 2018, Sexton allegedly told Sergeant Lymous that Plaintiff punched him, choked him, slammed him to the ground, "pushed his head into the metal frame of his bed," and "squeezed his penis approximately six times" during the encounter on August 25, 2018.[24]

### 2.    Plaintiff's Encounter with HT

Plaintiff likewise describes the encounter with HT on August 25, 2018, in detail.[25] That day, HT allegedly participated in a fistfight with another detainee, CH, in an area of the Juvenile Justice Center referred to as "Pelican A."[26] Plaintiff alleges that HT sustained multiple strikes to the head during the fistfight with CH.[27] Plaintiff asserts that he restrained CH, forced CH to leave Pelican A, and escorted CH to CH's personal room.[28] On the other hand, however, Plaintiff asserts

---

[21] *Id.*

[22] *Id.* at 8–9.

[23] *Id.* at 8.

[24] *Id.* at 9.

[25] *Id.* at 6.

[26] *Id.*

[27] *Id.*

[28] *Id.*

that HT refused to leave Pelican A and peacefully return to HT's personal room.[29] Plaintiff allegedly responded by using an "upper torso" maneuver on HT to forcefully escort him back to HT's room.[30]

Plaintiff asserts that he released HT from the upper torso maneuver once HT arrived in HT's personal room.[31] HT allegedly retaliated by attempting to throw the liquid contents from an ice pack at Plaintiff.[32] Multiple staff members, including Plaintiff, allegedly responded by placing mechanical restraints on HT's body.[33] Plaintiff asserts that the mechanical restraints were eventually removed from HT's body.[34]

Plaintiff states that the Juvenile Justice Center's video footage displays only what transpired outside of HT's personal room—not what transpired inside of the room.[35] Nonetheless, Plaintiff maintains that the video footage displays staff members in a position to observe Plaintiff's actions while inside of HT's personal room.[36] These staff members allegedly each wrote statements explaining Plaintiff's actions during the encounter with HT.[37] Plaintiff asserts that the staff members' statements indicated that Plaintiff's actions were appropriate for the

---

[29] *Id.*

[30] *Id.* at 6–7.

[31] *Id.* at 7.

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.*

situation.[38]

Yet, similar to Sexton, HT allegedly reported to several people—including the Superintendent—an entirely different version of how the encounter on August 25, 2018, transpired.[39] On August 25, 2018, HT allegedly told the Superintendent that Plaintiff repeatedly slammed his head on the ground and choked him.[40] A few days later, on August 27, 2018, HT allegedly reported to Sergeant Lymous that Plaintiff repeatedly forearmed his head and struck him.[41]

### 3.    Plaintiff's Encounter with Jamuel Sheppard

Plaintiff also describes the encounter with Sheppard on August 25, 2018.[42] On that day, Sheppard allegedly was in an area of the Juvenile Justice Center referred to as "Saints B."[43] Plaintiff alleges that Sheppard threatened to toss bleach at staff members while located in Saints B.[44] Plaintiff allegedly arrived at Saints B while another staff member was attempting to restrain Sheppard.[45] When Plaintiff helped the staff members, Sheppard allegedly attempted to strike Plaintiff in the face.[46] Plaintiff asserts that he responded by employing an "upper torso" maneuver

---

[38] *Id.*

[39] *Id.* at 9.

[40] *Id.*

[41] *Id.* at 10.

[42] *Id.* at 7.

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.* at 7–8.

on Sheppard to force him out of Saints B and into Sheppard's personal room.[47]

Plaintiff states that the Juvenile Justice Center's video footage displays "what occurred outside of [] Sheppard's room, but not what occurred inside [of Sheppard's room]."[48] Nevertheless, Plaintiff maintains that the video footage displays staff members in a position to observe Plaintiff's actions while inside of Sheppard's personal room.[49] These staff members allegedly each wrote statements explaining Plaintiff's actions during the encounter with HT.[50] Plaintiff asserts that the staff members' statements indicated that Plaintiff's actions were appropriate for the situation.[51]

Yet, like Sexton and HT, Sheppard allegedly reported to several people—including the Superintendent—a completely different story of how the encounter on August 25, 2018, transpired.[52] On August 25, 2018, Sheppard allegedly reported to the Superintendent that Plaintiff used profanity, threatened him, and punched him.[53] A few days later, on August 27, 2018, Sheppard reported to Sergeant Lymous that Plaintiff punched Sheppard several times during the encounter on August 25, 2018.[54]

### 4.      The Alleged Conspiracy and Plaintiff's Arrest

Although Plaintiff's encounter with each detainee involved separate incidents, Plaintiff

---

[47] *Id.* at 8.

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.* at 9.

[53] *Id.*

[54] *Id.* at 11.

asserts that the three detainees conspired with each other to make false statements against Plaintiff.[55] Sergeant Lymous allegedly ordered Detective Tonisha Goodwin ("Detective Goodwin") to investigate the detainees' complaints against Plaintiff.[56] According to Plaintiff, Detective Goodwin arrived at the Juvenile Justice Center and conversed with the Superintendent about the three incidents.[57] The Superintendent apparently provided Detective Goodwin with each detainee's complaint against Plaintiff and each staff member's statement involving the three incidents on August 25, 2018.[58] The Superintendent apparently also permitted Detective Goodwin to review the video footage for each incident on August 25, 2018.[59]

According to Plaintiff, Detective Goodwin informed Sergeant Lymous of the information provided by the Superintendent.[60] Sergeant Lymous allegedly then completed the following steps in his investigation: (1) reviewed each staff member's written statement regarding the incidents on August 25, 2018; (2) reviewed the video footage of the incidents on August 25, 2018; (3) interviewed Sexton, HT, and Sheppard; and (4) interviewed Plaintiff.[61] After conducting that investigation, Sergeant Lymous allegedly submitted an "Affidavit for Arrest Warrant" ("Affidavit") for Plaintiff's arrest on August 31, 2018.[62] In the Affidavit, Sergeant Lymous

---

[55] *Id.* at 8.

[56] *Id.* at 9.

[57] *Id.*

[58] *Id.*

[59] *Id.*

[60] *Id.*

[61] *Id.* Although Plaintiff states in the Amended Complaint that Sergeant Lymous himself interviewed Sexton, HT, and Sheppard, Sergeant Lymous's Affidavit states that he "observed independent forensic interviews of the three victims." Rec. Doc. 25-2.

[62] Rec. Doc. 23 at 11.

allegedly certified under oath that probable cause existed to believe that Plaintiff committed three crimes under Louisiana law: the felony violation of second-degree cruelty to a juvenile in connection with Sexton, the misdemeanor violation of simple battery in connection with HT, and the felony violation of malfeasance in office in connection with no particular detainee.[63]

On August 31, 2018, a magistrate judge in the Criminal District Court for the Parish of Orleans issued an arrest warrant for Plaintiff, which was based on Sergeant Lymous's sworn Affidavit.[64] Plaintiff now contends that Sergeant Lymous's Affidavit included false statements and omitted exculpatory information.[65] Plaintiff provides the following examples:

a. Sgt. Lymous falsely claimed that the video of the incident with Kylee Sexton shows that "[o]ne of [Plaintiff's] movements was consistent with a jab punch."

b. Sgt. Lymous [] intentionally omitted [] facts that he learned from the video and medical records that showed beyond doubt that Mr. Sexton's accusations were false.

c. Sgt. Lymous purposefully excluded that the source of HT's alleged injuries was his fight with CH, rather than [Plaintiff].

d. Sgt. Lymous intentionally excluded that Kylee Sexton, HT, and Jamuel Sheppard knew each other prior to their detention at the Center and were known associates within one another regarding criminal conduct inside and outside of the Center.

e. Sgt. Lymous purposefully excluded that [Plaintiff] was a witness against Mr. Sexton regarding the detainee's attempted escape.

f. Sgt. Lymous intentionally excluded that [Plaintiff] was a witness against Kylee Sexton, HT, and Jamuel Sheppard to the violence they inflicted and attempted to inflict on others.

g. Sgt. Lymous also intentionally omitted the extensive criminal and violent histories of the three juveniles.

---

[63] *Id*. at 11–12.

[64] *Id*. at 13.

[65] *Id*. at 12.

h. Sgt. Lymous purposefully excluded the lack of any criminal or violent histories of [Plaintiff] or the several staff members who wrote statements indicating plaintiff did not do anything inappropriate.[66]

The New Orleans Police Department arrested Plaintiff after the magistrate judge issued the arrest warrant.[67] Thereafter, Plaintiff's family paid a commercial surety to post his bond and ensure his release from jail.[68] Plaintiff asserts that multiple newspapers and other media outlets discussed his arrest.[69] Plaintiff also asserts that the Juvenile Justice Center terminated his employment because of the arrest.[70]

According to the Amended Complaint, the Orleans Parish District Attorney presented the criminal case to a Grand Jury of the Orleans Parish Criminal District Court.[71] Plaintiff alleges that on or about February 7, 2019, the Grand Jury returned a no true bill, and the Orleans Parish District Attorney has declined to proceed with any charges against Plaintiff.[72]

**B.    *Procedural Background***

On August 25, 2019, Plaintiff filed a complaint in this Court against Defendants.[73] On October 23, 2019, Defendants filed the first motion to dismiss pursuant to Federal Rule of Civil

---

[66] *Id.* at 12–13.

[67] *Id.* at 13.

[68] *Id.* at 14.

[69] *Id.*

[70] *Id.*

[71] *Id.*

[72] *Id.*

[73] Rec. Doc. 1. Plaintiff also brought Louisiana state law claims against the Parents and Guardians of Kylee Sexton (identified in the complaint as "KS" because Sexton had not yet reached majority age), the Parents and Guardians of HT, Jamuel Sheppard, and the Parents and Guardians of Jamuel Sheppard. Rec. Doc. 1.

Procedure 12(b)(6).[74] On December 4, 2019, the Court held oral argument on Defendants' first motion to dismiss.[75] During oral argument, Plaintiff requested leave to amend the Complaint. Defendants did not object to Plaintiff amending the Complaint. The Court gave Plaintiff fourteen days to amend the Complaint.[76] The Court subsequently denied Defendants' first motion to dismiss as moot.[77]

On December 18, 2019, Plaintiff filed the "First Supplemental and Amending Complaint" ("Amended Complaint").[78] In the Amended Complaint, Plaintiff alleges that Defendants violated his rights under the Fourth Amendment to the U.S. Constitution and his due process rights under the Louisiana state constitution.[79] Plaintiff further alleges that Defendants are liable to Plaintiff for false arrest and battery under Louisiana state law.[80] Plaintiff also brings Louisiana state law claims for defamation and assault and battery against Sexton, HT, Sheppard, and their parents and legal guardians.[81]

On January 2, 2020, Defendants filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[82] On January 21, 2020, Plaintiff filed an opposition to the

---

[74] Rec. Doc. 12.

[75] Rec. Doc. 21.

[76] *Id.*

[77] Rec. Doc. 32.

[78] Rec. Doc. 23.

[79] *Id.* at 15–16. Plaintiff brings his federal due process claim pursuant to 42 U.S.C. § 1983. *Id.* at 15.

[80] *Id.* at 16–17.

[81] *Id.* at 17–18. Plaintiff avers that Sexton, HT, and Sheppard's parents or guardians are vicariously liable for the injuries allegedly caused by Sexton, HT, and Sheppard. *Id.* at 19.

[82] Rec. Doc. 25.

instant motion to dismiss.[83] On January 30, 2020, Defendants filed a reply memorandum in further support of the instant motion.[84]

## II. Parties' Arguments

### A.    *Defendants' Arguments in Support of the Motion*

Defendants make two arguments to demonstrate that the instant action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).[85] First, Defendants argue that Plaintiff's § 1983 claim should be dismissed because Plaintiff fails to adequately plead a Fourth Amendment violation because his arrest was supported by probable cause.[86] Second, Defendants invoke the defense of qualified immunity in the instant motion.[87]

#### 1.    **Plaintiff fails to adequately plead a Fourth Amendment Violation**

Plaintiff brings a false arrest claim under the Fourth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.[88] The Fifth Circuit has recognized that "both intentional misrepresentations in warrant applications and material omissions from the same may give rise to [a] Fourth Amendment claim."[89] To prevail on such a claim a plaintiff must show that the warrant application would not have established probable cause if it had excluded the allegedly

---

[83] Rec. Doc. 26.

[84] Rec. Doc. 31.

[85] Rec. Doc. 25-1.

[86] *Id*. at 4–11.

[87] *Id*. at 1.

[88] Rec. Doc. 23 at 15.

[89] *Johnson v. Norcross*, 565 F. App'x 287, 289 (5th Cir. 2014) (citing *Kohler v. Englade*, 470 F.3d 1104, 1113–14 (5th Cir. 2006)).

false statements and included the allegedly exculpatory information.[90]

In the present case, Defendants argue that Sergeant Lymous's warrant application would have established probable cause even if his Affidavit had excluded the allegedly false statements and included the allegedly exculpatory information.[91] Indeed, Defendants contend that probable cause would have existed for each charge in the arrest warrant—including second-degree cruelty to a juvenile in connection with Sexton, simple battery in connection with HT, and malfeasance in office in connection with no particular detainee.[92] They conclude that Plaintiff therefore fails to adequately plead a Fourth Amendment violation.[93]

## 2.    Sergeant Lymous is entitled to the Defense of Qualified Immunity

A public official is entitled to qualified immunity even if he or she violates a plaintiff's constitutional right—provided that the official's conduct was objectively reasonable in light of clearly established law.[94] The qualified immunity defense involves a two-pronged inquiry: (1) whether a plaintiff adequately pleaded that a public official violated a constitutional right, and (2) whether that official's conduct was objectively reasonable in light of clearly established law.[95] A public official's actions are objectively reasonable unless every reasonable official in the same circumstances would have understood his or her actions to violate the law.[96] Once qualified

---

[90] *See id.* (citing *Freeman v. Cnty. of Bexar*, 210 F.3d 550, 553 (5th Cir. 2000)).

[91] Rec. Doc. 25-1 at 5–7.

[92] *See id.*

[93] *Id.* at 12.

[94] *See Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004).

[95] *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001).

[96] *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001).

immunity is invoked, the plaintiff carries the burden to prove that defense's inapplicability.[97]

In this case, Defendants contend that Plaintiff does not carry his burden under either prong.[98] First, Defendants argue that because Plaintiff's Fourth Amendment claim fails for the reasons summarized above, there was no constitutional violation based on the facts alleged.[99] Second, Defendants argue that Plaintiff does not, and cannot, allege that Sergeant Lymous's actions were objectively unreasonable.[100] Defendants note that Plaintiff's "constitutional claim is based on certain alleged omissions and [Sergeant Lymous's] interpretation of what he observed on a surveillance video."[101] Defendants point out that Plaintiff does not allege all "other reasonable officers would have included or excluded this information from an arrest affidavit."[102] Accordingly, Defendants conclude that Plaintiff fails to carry his burden under the second prong of qualified immunity.[103]

### 3. The Court should not exercise supplemental jurisdiction over any remaining state law claims.

According to Defendants, if the Court dismisses Plaintiff's Fourth Amendment claim, Plaintiff will have only state law claims remaining in the Amended Complaint.[104] Defendants contend that the Court should decline to exercise supplemental jurisdiction over any remaining

---

[97] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

[98] *See* Rec. Doc. 25-1 at 11–13.

[99] *Id.* at 12.

[100] *Id.*

[101] *Id.*

[102] *Id.*

[103] *See id.*

[104] *See id.* at 13.

state law claims.[105] They specifically contend that the Court "should follow the practice in the Fifth Circuit . . . of declining jurisdiction over state law tort claims once all federal claims have been dismissed."[106]

**B.      Plaintiff's Arguments in Opposition to the Motion**

Plaintiff makes two principal arguments in opposition to the instant motion to dismiss.[107] First, Plaintiff argues that he adequately pleads a Fourth Amendment violation because, had the alleged deficiencies in Sergeant Lymous's Affidavit been corrected, probable cause would not have existed for any of the three crimes for which Plaintiff was arrested or for any other crime.[108] Second, Plaintiff argues that Sergeant Lymous is not entitled to qualified immunity because he did not act objectively reasonably in light of clearly established law.[109]

**1.      Plaintiff adequately pleads a Fourth Amendment Violation**

Plaintiff notes that his well-pleaded allegations must be considered true at the motion to dismiss stage.[110] He alleges that Sergeant Lymous intentionally made false statements in, and purposefully omitted exculpatory information from, the Affidavit.[111] The remaining issue concerns whether a corrected affidavit that included the allegedly exculpatory information and removed the allegedly false information would have established probable cause for any of the three following crimes: (1) second-degree cruelty to a juvenile in connection with Sexton, (2)

---

[105] *Id.*

[106] *Id.*

[107] Rec. Doc. 26.

[108] *Id.* at 7–12.

[109] *Id.* at 12–13.

[110] *Id.* at 7.

[111] Rec. Doc. 23 at 12.

simple battery in connection with HT, and (3) malfeasance in office in connection with no particular detainee.[112] Plaintiff argues that probable cause did not exist for any of the three crimes when considering only Sergeant Lymous's corrected affidavit.[113]

    *a.   Second-degree cruelty to a juvenile in connection with Sexton*

Plaintiff was charged with second-degree cruelty to a juvenile in connection with Sexton.[114] Sexton allegedly told Sergeant Lymous that Plaintiff punched him, choked him, slammed him on the ground, "pushed his head into the metal frame of his bed," and "squeezed his penis approximately six times" during the encounter on August 25, 2018.[115] Plaintiff contends that Sergeant Lymous reviewed the video of the August 25, 2018, encounter and saw that Sexton's statements were false.[116]

Plaintiff also argues that Sergeant Lymous falsely stated in the arrest Affidavit that Plaintiff's actions were consistent with a jab punch against Sexton.[117] Plaintiff further argues that Sergeant Lymous also allegedly withheld the following exculpatory information: (1) Plaintiff was a witness against Sexton for his previously attempted escape; (2) Sexton's medical records did not include that Plaintiff "squeezed [Sexton's] penis approximately six times"; (3) Sexton had an extensive criminal and violent history; (4) the three detainees were "criminal associates" of one another; and (5) Plaintiff and the other staff members had neither criminal nor violent histories.[118]

---

[112] *See* Rec. Doc. 26 at 8.

[113] *Id.* at 8–12.

[114] *Id.* at 8.

[115] Rec. Doc. 23 at 9.

[116] *Id.* at 10.

[117] Rec. Doc. 26 at 9.

[118] *Id.*

Plaintiff concludes that no reasonable magistrate judge would have found probable cause for second-degree cruelty of a juvenile when aware of the facts enumerated above.[119]

### b.   Simple battery in connection with HT

Plaintiff was charged with committing simple battery against HT.[120] HT allegedly told Sergeant Lymous that Plaintiff repeatedly forearmed his head and struck him.[121] Yet Plaintiff argues that Sergeant Lymous failed to include the following information in his Affidavit: (1) HT was injured in a fistfight with CH on August 25, 2018; (2) HT knew the other two complaining detainees before entering the Juvenile Justice Center; (3) the three detainees were "criminal associates" of one another; and (4) Plaintiff witnessed HT and CH's fistfight on August 25, 2018.[122] Plaintiff concludes that the magistrate judge would not have found probable cause of simple battery if aware of those facts.[123]

### c.   Malfeasance in office in connection with no particular detainee

Plaintiff was charged with committing malfeasance in office in connection with no particular detainee.[124] Louisiana Revised Statute § 14:134 defines the crime of malfeasance in office as follows:

A. Malfeasance in office is committed when any public officer or public employee shall:

(1) Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee; or

---

[119] *Id.*

[120] *Id.* at 10.

[121] *Id.*

[122] *Id.* at 10–11.

[123] *Id.* at 12.

[124] *Id.* at 11.

17

(2) Intentionally perform any such duty in an unlawful manner; or

(3) Knowingly permit any other public officer or public employee, under his authority, to intentionally refuse or fail to perform any duty lawfully required of him, or to perform any such duty in an unlawful manner. [125]

Plaintiff states that he is unsure why Sergeant Lymous thought that Plaintiff violated the malfeasance statute. [126] Perhaps, according to Plaintiff, Sergeant Lymous thought that Plaintiff "intentionally performed his duties in an unlawful manner by battering or mistreating one or more of the detainees." [127] Yet Plaintiff contends that the three detainees' allegations lacked veracity and were unreliable while, on the other hand, Plaintiff and each staff member's allegations were veracious and reliable. [128] Plaintiff concludes that the magistrate judge would not have found probable cause for committing malfeasance in office if he had viewed a corrected affidavit. [129]

### 2.      Sergeant Lymous is not Entitled to the Defense of Qualified Immunity

Plaintiff argues that the United States Supreme Court clearly established in 1978 that intentionally including false statements in—or omitting exculpatory information from—an arrest affidavit violates the Fourth Amendment. [130] Plaintiff asserts that Sergeant Lymous intentionally made false statements in the Affidavit. [131] Plaintiff also asserts that Sergeant Lymous purposefully

---

[125] La. Rev. Stat. § 14:134.

[126] Rec. Doc. 26 at 12.

[127] *Id.*

[128] *Id.*

[129] *Id.*

[130] *Id.* at 12–13.

[131] *Id.* at 13.

excluded exculpatory facts in the Affidavit.[132] Plaintiff maintains that a police officer, such as Sergeant Lymous, does not act in an objectively reasonable manner when he intentionally includes false statements and purposefully excludes exculpatory facts in an arrest affidavit.[133]

## C.   *Defendants' Reply Memorandum in Further Support of the Motion*

In reply, Defendants address the reliability and veracity of the three detainees' statements explaining the three incidents on August 25, 2018.[134] Plaintiff contends that his statements and the staff members' statements were more reliable.[135] But Defendants reply that Sergeant Lymous included all of those statements in the arrest Affidavit.[136] A magistrate judge, considering all statements, decided that probable cause existed for three specific crimes.[137] Defendants also reiterate that Sergeant Lymous's actions "were objectively reasonable" and "me[t] the standard for qualified immunity" in light of clearly established law.[138]

## III. Legal Standard

## A.   *Legal Standard for a Motion to Dismiss under Rule 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[139] A motion to dismiss for failure to

---

[132] *Id.*

[133] *Id.*

[134] Rec. Doc. 31 at 1–2.

[135] *Id.*

[136] *Id.* at 2.

[137] *Id.*

[138] *Id.* at 2–3.

[139] Fed. R. Civ. P. 12(b)(6).

state a claim is "viewed with disfavor and is rarely granted."[140] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."[141]

The "[f]actual allegations must be enough to raise a right to relief above the speculative level."[142] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[143] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[144]

Although a court must accept all "well-pleaded facts" as true, a court need not accept legal conclusions as true.[145] "[L]egal conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations."[146] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[147] If the factual allegations are insufficient to raise a right to relief above the speculative level, or an "insuperable" bar to relief exists, the claim must be dismissed."[148]

---

[140] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[141] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted).

[142] *Twombly*, 550 U.S. at 555. Put another way, a plaintiff must plead facts that allow the court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

[143] *Id.*

[144] *Id.*

[145] *Iqbal*, 556 U.S. at 677–78.

[146] *Id.* at 679.

[147] *Id.* at 678.

[148] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199,

### B.   *Legal Standard for Qualified Immunity*

When a defendant invokes the defense of qualified immunity, the plaintiff carries the burden of demonstrating its inapplicability.[149]   Qualified immunity protects government officials from liability for civil damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[150] Qualified immunity is an "immunity from suit rather than a mere defense to liability."[151]

The Supreme Court set forth a two-part framework for analyzing whether a defendant is entitled to qualified immunity.[152]   Part one asks the following question: "[D]o the facts alleged show the officer's conduct violated a constitutional right?"[153] Part two asks whether the allegedly violated right is "clearly established."[154] If "the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were 'objectively reasonable' in light of [clearly established law]."[155] A law enforcement officer "who reasonably but mistakenly commit[s] a constitutional violation [is] entitled to immunity."[156]   "[W]hether an official's conduct was objectively reasonable is a

---

215 (2007)).

[149] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

[150] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[151] *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

[152] *Saucier*, 533 U.S. 194.

[153] *Id.* at 201.

[154] *Id.* at 202.

[155] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (quoting *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004)).

[156] *Collins*, 382 F.3d at 537 (quoting *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 488 (5th Cir. 2001)).

question of law for the court, not a matter of fact for the jury."[157]

## C.   *Legal Standard for Supplemental Jurisdiction*

If a court has original jurisdiction over a federal claim pursuant to 28 U.S.C. § 1331, the court also has supplemental jurisdiction over related state law claims "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[158] Upon dismissal of the federal claim that served as the basis for original jurisdiction, the district court retains its statutory supplemental jurisdiction over any related state law claims.[159]

Yet the Court may choose whether or not to exercise supplemental jurisdiction.[160] "A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."[161] The "general rule" in the Fifth Circuit is to decline to exercise jurisdiction over supplemental state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial—but that rule "is neither mandatory nor absolute."[162]

28 U.S.C. § 1367(c) enumerates the circumstances in which district courts may refuse to exercise supplemental jurisdiction:

> The district courts may decline to exercise supplemental jurisdiction over a claim
> under subsection (a) if –

---

[157] *Brown*, 623 F.3d at 253.

[158] 28 U.S.C. § 1367(a).

[159] *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009).

[160] *Id.*

[161] *Id.* at 639 ("The district courts *may* decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.").

[162] *Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (citations omitted).

(1)     the claim raises a novel or complex issue of State law,

(2)     the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)     the district court has dismissed all claims over which it has original jurisdiction, or

(4)     in exceptional circumstances, there are other compelling reasons for declining jurisdiction.[163]

The Court's decision to retain supplemental jurisdiction is guided by "both the statutory provisions of 28 U.S.C. § 1367(c) and the balance of the relevant factors of judicial economy, convenience, fairness, and comity."[164] "No single factor" in the supplemental jurisdiction analysis is dispositive.[165] Courts must review all of the factors under "the specific circumstances of a given case."[166]

## IV. Analysis

Defendants move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) on all of Plaintiff's claims, including his § 1983 claim that the arrest violated his rights under the Fourth Amendment to the Constitution.[167] First, Defendants argue that Plaintiff fails to adequately plead a Fourth Amendment violation for false arrest because the factual allegations set forth in the Amended Complaint do not negate probable cause for Plaintiff's arrest.[168] In opposition, Plaintiff contends that he adequately pleads a Fourth Amendment violation because, had the

---

[163] 28 U.S.C. § 1367.

[164] *Batiste*, 179 F.3d at 227; *Parker & Parsley Petroleum Co. v. Dresser Ind.*, 972 F.2d 580, 585 (5th Cir. 1992).

[165] *Parker*, 972 F.2d at 587.

[166] *Id.*

[167] Rec. Doc. 25-1 at 1.

[168] *Id.*

alleged deficiencies in Sergeant Lymous's Affidavit been corrected, probable cause would not have existed for any of the three crimes for which Plaintiff was arrested or for any other crime.[169] Second, Defendants argue that Sergeant Lymous is entitled to qualified immunity because the Amended Complaint fails to plead that he acted in an objectively unreasonable manner.[170] In opposition, Plaintiff asserts that Sergeant Lymous is not entitled to qualified immunity because he did not act objectively reasonably in light of clearly established law.[171] The Court addresses each of these arguments in turn.

**A.      *Whether Plaintiff Adequately Pleads a Fourth Amendment Violation***

"Under the Fourth Amendment, made applicable to the States by the Fourteenth Amendment, the people are 'to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, . . . and no Warrants shall issue, but upon probable cause. . . .'"[172] Based on the Affidavit submitted by Sergeant Lymous, the magistrate judge found that probable cause to arrest Plaintiff existed for three crimes under Louisiana law: the felony violation of second-degree cruelty to a juvenile in connection with Sexton, the misdemeanor violation of simple battery in connection with HT, and the felony violation of malfeasance in office in connection with no particular detainee.[173] Plaintiff contends that had the Affidavit excluded the allegedly false statements and included the allegedly exculpatory information, no

---

[169] Rec. Doc. 26 at 7–12.

[170] Rec. Doc. 25-1 at 1.

[171] Rec. Doc. 26 at 12–13.

[172] *Maryland v. Pringle*, 540 U.S. 366, 369 (2003) (quoting U.S. Const. amend. IV).

[173] Rec. Doc. 23 at 13.

probable cause would have existed for any of these three crimes.[174] Defendants argue that Plaintiff fails to adequately plead a Fourth Amendment violation because Sergeant Lymous's warrant application would have established probable cause even if the Affidavit had excluded the allegedly false statements and included the allegedly exculpatory information.[175]

"The claim for false arrest does not cast its primary focus on the validity of each individual charge; instead, we focus on the validity of the arrest. If there was probable cause for any of the charges made . . . then the *arrest* was supported by probable cause, and the claim for false arrest fails."[176] Usually, "[w]here an arrest is made under the authority of a properly issued warrant, the arrest is simply not a false arrest."[177]

The Court will now address whether—accepting the well-pleaded facts in the Amended Complaint as true[178]—probable cause would have existed for each of the three alleged crimes. The Court considers the factual allegations set forth in the Amended Complaint along with Sergeant Lymous's Affidavit, which is referenced in the Complaint and central to Plaintiff's claims.[179] Probable cause exists "when the totality of the facts and circumstances within a police

---

[174] *See generally* Rec. Doc. 26.

[175] Rec. Doc. 25-1 at 5–7.

[176] *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995); *see also Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004) ("To ultimately prevail on his section 1983 false arrest/false imprisonment claim, [the plaintiff] must show that [the defendant] did not have probable cause to arrest him.")

[177] *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982).

[178] *Iqbal*, 556 U.S. at 677–78.

[179] Rec. Doc. 23; Rec. Doc. 25-2. In considering a motion to dismiss for failure to state a claim, a court must limit itself to the contents of the pleadings, including attachments thereto. Fed. R. Civ. P. 12(b)(6). However, the Fifth Circuit has noted approvingly of various other circuits' holdings that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley*, 224 F.3d 496, 498–99 (5th Cir. 2000) (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this case, Plaintiff's Amended Complaint makes numerous references to the Affidavit to allege the federal false arrest claim. *See generally* Rec. Doc. 23. Plaintiff does not object to the Court's consideration of the Affidavit in ruling on the instant Rule 12(b)(6) motion. Accordingly, the Court considers the Affidavit because it is

officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect has committed or was committing an offense."[180] Probable cause "does not demand any showing that such a belief be correct or more likely true than false."[181] To determine whether Plaintiff's arrest was supported by probable cause, this Court must make a "practical, common-sense [determination] whether given all of the circumstances" a reasonable officer could have believed "there is a fair probability" that Plaintiff committed any of the crimes charged.[182]

### 1.    Whether probable cause would have existed for second-degree cruelty to a juvenile

Based on the Affidavit submitted by Sergeant Lymous, the magistrate judge found probable cause to arrest Plaintiff for second-degree cruelty to a juvenile in connection with Sexton in violation of La. Rev. Stat. § 14:93.2.3.[183] "Second degree cruelty to juveniles is the intentional or criminally negligent mistreatment or neglect by anyone over the age of seventeen to any child under the age of seventeen which causes serious bodily injury or neurological impairment to that child."[184] The Affidavit provides the following account of the incident involving Sexton.

Sergeant Lymous certified under oath that on August 26, 2018, NOPD was dispatched to the Juvenile Justice Center to investigate claims of physical abuse.[185] According to the Affidavit, a NOPD detective learned that four detainees, including Sexton, reported to the Juvenile Justice

---

referred to in the Complaint and central to Plaintiff's claim.

[180] *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001) (internal quotation and citation omitted).

[181] *Texas v. Brown*, 460 U.S. 730, 742, 103 S. Ct. 1535, 1543, 75 L. Ed. 2d 502 (1983).

[182] *Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir. 2000) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

[183] Rec. Doc. 23 at 13.

[184] La. Rev. Stat. § 14:93.2.3.

[185] Rec. Doc. 25-2 at 1.

Center administration  that they were abused by Plaintiff.[186]  Sergeant Lymous attested that the

detective  learned  that the guardian  and attorney  representing  Sexton  had contacted  the Juvenile

Justice  Center  and  indicated  that Sexton  "had  been  beaten  by  a staff  member."[187]  Sergeant

Lymous  further  attested  that incident  reports  revealed  that Plaintiff  had  implemented  restraints

on Sexton, causing  him  to suffer  "a concussion,  abrasions  and contusions."[188]  According  to the

Affidavit,  incident  reports  also  described  Plaintiff's  use  of an "upper  torso"  maneuver,  which

Sergeant  Lymous  "learned  was a restraint  technique . . . [that causes] the detainees'  arms to be

pulled  backwards  and pinned  behind  him. This  restraint  technique  prevents  the detainees'  use of

his arms."[189]

According  to the Affidavit,  on the following  day, Sergeant  Lymous  observed  independent

forensic  interviews  with  the complainants.[190]  Sergeant  Lymous  attested  that during  Sexton's

interview,  Sexton stated that on August 25, 2018, at approximately  8:30 PM, Plaintiff  confronted

him about returning  to his cell.[191]  According  to the Affidavit,  Sexton told the interviewer  that he

verbally  resisted,  at which point Plaintiff  "approached  him from the rear, put him in an 'arm lock'

and pulled  his shirt towards his neck, which choked him."[192]  During  the interview,  Sexton stated

that Plaintiff  then picked  Sexton up and "slammed  him  to the ground,  which  caused  his eyes to

---

[186] *Id.*

[187] *Id.* at 2.

[188] *Id.*

[189] *Id.*

[190] *Id.*

[191] *Id.*

[192] *Id.*

roll back in his head and he blacked out."[193] According to Sexton, Plaintiff repeatedly used profane language, telling Sexton to "keep f**king moving," "stop resisting," and "shut the f**k up."[194] Sexton told the interviewer that Plaintiff also punched Sexton "upon his ribs and head," "chok[ed] him," and "pounded his head to the floor."[195] According to Sexton, while he was restrained on the floor, Plaintiff "grabbed and squeezed his [penis] approximately six times."[196] Sexton stated that at one point during the encounter, Sexton yelled "I can't breathe."[197]

According to the Affidavit, Sexton stated in the interview that after he was escorted back to his cell and was still in shackles, Plaintiff entered the cell, shoved Sexton's head onto the metal frame of his bed, and told him to "shut the f**k up."[198] Sergeant Lymous attested that Sexton was later diagnosed with a concussion by the Tulane University Hospital emergency staff.[199] Sergeant Lymous further attested that he observed two contusions on Sexton's head.[200] In the Affidavit, Sergeant Lymous stated that when he viewed silent video footage of the encounter,[201] he observed that Plaintiff "remained positioned on [Sexton's] upper torso" while Sexton "squirmed and flailed his legs."[202] Sergeant Lymous also attested that one of Plaintiff's movements was "consistent

---

[193] *Id.*

[194] *Id.*

[195] *Id.*

[196] The Affidavit omits the word "penis," but the Amended Complaint avers that Sexton "falsely stated that [Plaintiff] . . . grabbed and squeezed his penis approximately six times . . . ." Rec. Doc. 23 at 9.

[197] Rec. Doc. 25-1 at 2.

[198] *Id.*

[199] *Id.*

[200] *Id.* at 3.

[201] The Affidavit notes that "[n]o video footage was available from the interior of the cell." *Id.*

[202] *Id.*

with a jab punch" and that Plaintiff's "forearm most likely was upon the head and neck of [Sexton]."[203]

Plaintiff contends that the Affidavit contained false statements and omitted "substantial information" that negated probable cause for Plaintiff's arrest for the crime of second-degree cruelty toward juveniles in connection with Sexton.[204] Under the independent intermediary doctrine recognized in the Fifth Circuit, "even an officer who acted with malice . . . will not be liable if *the facts* supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or a grand jury, for that intermediary's 'independent' decision 'breaks the causal chain' and insulates the initiating party."[205] Thus, the magistrate judge's finding of probable cause presumptively insulates Defendants from liability for false arrest.

However, under the "taint" exception to the independent intermediary doctrine, the chain of causation remains intact if "it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant."[206] The "taint" exception applies when the officer procuring the warrant makes an "intentional and knowing false statement, or acts recklessly in disregard of the truth."[207] The "taint" exception also applies when the officer's "malicious motive … lead[s] them to withhold any relevant information."[208]

In *Buehler v. City of Austin/Austin Police Department,* the Fifth Circuit declined to apply

---

[203] *Id.*

[204] Rec. Doc. 23 at 12.

[205] *Hand v. Gary,* 838 F.2d 1420, 1427 (5th Cir. 1988) (quoting *Smith v. Gonzalez,* 670 F.2d 522, 526 (5th Cir. 1982)).

[206] *Id.* at 1428.

[207] *Anderson v. City of McComb, Miss.,* 539 F. App'x 385, 387 (5th Cir. 2013) (internal citations omitted).

[208] *Buehler v. City of Austin/Austin Police Dep't,* 824 F.3d 548, 555 (5th Cir. 2016) (*citing Cuadra v. Houston Ind. Sch. Dist.,* 626 F.3d 808, 813 (5th Cir. 2010)).

the taint exception where the plaintiff's evidence showed that his actions were subject to different interpretations.[209] Similarly, in *Anderson v. City of McComb*, the Fifth Circuit declined to apply the taint exception where there was "plainly room to disagree" on a statement in the arrest warrant, reasoning that the officer "cannot be responsible for representing one version of the disputed facts to the magistrate judge."[210] In both *Buehler* and *Anderson*, the Fifth Circuit affirmed the district court orders granting summary judgment in favor of the officers on Plaintiffs' Fourth Amendment claims.[211]

Despite his assertion of false *statements*, Plaintiff identifies only one allegedly false statement in the Affidavit: that the video of the incident shows that "[o]ne of [Plaintiff's] moves was consistent with a jab punch."[212] Like in *Buehler* and *Anderson*, the allegedly false statement appearing in the Affidavit merely reflects Sergeant Lymous's interpretation of what he saw in the video footage from the Juvenile Justice Center. Notably, Sergeant Lymous did not affirmatively state in the Affidavit that Plaintiff inflicted a jab punch upon Sexton, but rather noted that Plaintiff's movement was "consistent with" a jab punch.[213] This language makes clear that the statement reflects Sergeant Lymous's interpretation of what he saw; it does not represent the type of "intentional and knowing false statement" required to overcome the independent intermediary

---

[209] *Id.* Similar to Plaintiff here, the plaintiff in *Buehler* unsuccessfully argued that alleged inconsistencies between "(1) videos of the arrest incidents, his own affidavit, and other witnesses' accounts; and (2) the officers' reports, arrest affidavits, and deposition testimony" rendered the grand jury's indictment tainted. *Id.*

[210] *Anderson*, 539 F. App'x at 387.

[211] *Id.* at 387; *Buehler*, 824 F.3d at 557.

[212] Rec. Doc. 23 at 12.

[213] Rec. Doc. 25-2 at 3.

doctrine.[214]

Moreover, even absent the statement about a "jab punch," the numerous remaining assertions in the Affidavit make it clear that the magistrate judge's finding of probable cause did not hinge on the possible "jab punch." The Affidavit references multiple sources of evidence inculpating Plaintiff in the crime of second-degree cruelty to a juvenile, including incident reports documenting Plaintiff's use of a restraint technique that supposedly caused Sexton to suffer "a concussion, abrasions and contusions;" statements Sexton purportedly made that Plaintiff "choked him," "slammed him to the ground," and "pounded his head to the floor;" and video footage that indicated to Sergeant Lymous that Plaintiff "remained positioned on [Sexton's] upper torso" while Sexton "squirmed and flailed his legs."[215] Even ignoring the "jab punch"-like movement referenced in the Affidavit, probable cause to arrest Plaintiff plainly existed in this case.

Plaintiff also asserts that Sergeant Lymous omitted "substantial information" from the Affidavit that would have exculpated Plaintiff from the crime of second-degree cruelty to a juvenile.[216] Specifically, Plaintiff alleges that Sergeant Lymous withheld the following exculpatory information: (1) Plaintiff was a witness against Sexton for his previously attempted escape, as well as violence he inflicted and attempted to inflict on others; (2) Sexton's medical records did not include that Plaintiff "squeezed [Sexton's] penis approximately six times"; (3) Sexton had an extensive criminal and violent history; (4) the three detainees were "criminal associates" of one another; (5) Plaintiff and the other staff members had neither criminal nor

---

[214] *Anderson*, 539 F. App'x at 387 (internal citations omitted).

[215] Rec. Doc. 23 at 2–3.

[216] *Id.* at 12.

violent histories; and (6) facts Sergeant Lymous learned from the video and medical records "showed beyond doubt that Mr. Sexton's accusations were false."[217] Plaintiff argues that no reasonable magistrate judge would have found probable cause for second-degree cruelty of a juvenile if made aware of the facts enumerated above.[218]

For the reasons that follow, the Court finds that a reasonable magistrate judge could have found probable cause for second-degree cruelty of a juvenile even if made aware of the facts enumerated above. First, Plaintiff offers a highly speculative account of a supposed conspiracy between Sexton, HT, and Sheppard whereby the three "known associates" "conspired" to make false statements and seek "revenge" against Plaintiff because Plaintiff was a witness against Sexton in an unrelated matter and had previously interfered with Sexton's presumed wrongdoing.[219] While Plaintiff's theory may cast doubt on the credibility of Sexton's statements, this is not a foregone conclusion: Plaintiff's theory that the complainants were conspiring against him could also have suggested that Plaintiff had a motive to retaliate against Sexton, thereby reinforcing the magistrate judge's finding of probable cause. Regardless, even if Sexton's statements are considered in light of these alleged omissions, the remaining evidence offered in the Affidavit—including the incident reports, Sergeant Lymous's account of the video footage and Sexton's head injuries, and the medical records from Tulane University Hospital—suffices to establish probable cause in this case.

Second, Plaintiff contends that Sergeant Lymous omitted Sexton's "violent and criminal

---

[217] *Id.* at 12–13.

[218] Rec. Doc. 26 at 9.

[219] Rec. Doc. 23 at 8.

history" from the Affidavit.[220] However, the fact that Sexton had a prior history could have been inferred by the magistrate judge from his placement in the Juvenile Detention Facility. Regardless, Plaintiff does not sufficiently allege that if the information concerning Sexton's criminal history had been included, the Affidavit would be insufficient to establish probable cause. In *United States v. Naranjo*, the Fifth Circuit concluded that "the [omitted] fact that [the informant] was a con man with a criminal record would not have been fatal to a finding of probable cause."[221] Notably, Sexton was neither an informant nor a third-party witness; he was the alleged victim. Fifth Circuit precedent dictates that victim-eyewitnesses are generally considered reliable reporters absent a clear motive to lie.[222] Here, Sexton's prior conduct did not preclude him from also being a victim of a crime, and the fact of his juvenile criminal history does not automatically render his statements untrue.[223]

Similarly, the alleged omission of the fact that Plaintiff and other staff members *did not* have violent or criminal histories does not affect the probable cause determination. Plaintiff's emphasis on Sexton's criminal history, and the Juvenile Justice Center staff members' lack

---

[220] *Id.* at 10.

[221] 309 F. App'x 859, 864 (5th Cir. 2009); *see also United States v. Arispe*, 328 F. App'x 905, 907 (5th Cir. 2009) (finding that omission of the informant's criminal history from the affidavit did not render probable cause lacking).

[222] *United States v. Jackson,* 818 F.2d 345 (5th Cir. 1987). Plaintiff relies on *Hale v. Fish*, 899 F.2d 390, 399 (5th Cir. 1990), to argue that the victim-eyewitnesses in this case had a motive to lie. Rec. Doc. 26 at 11. In *Hale*, the Fifth Circuit acknowledged the general principle that a victim-eyewitness' reliability need not be proven but found an exception where the victim-eyewitness was being prosecuted by the district attorney's office that was the subject of the criminal inquiry leading to Plaintiff's arrest. 899 F.2d at 399. The Court relied on the fact that two counts were dropped from the informant's indictment on the same day the criminal complaint against Plaintiff was made to find the victim-eyewitness's reliability was diminished. *Id.* Unlike in *Hale*, the motive to lie asserted by Plaintiff in this case is highly conjectural and misplaced in the context of an arrest warrant.

[223] The Court notes that many detainees in juvenile and adult detention facilities have extensive criminal histories. To suggest, as Plaintiff does, that their accounts of misconduct by law enforcement officials are inherently less credible gives rise to troublesome implications in this case and beyond.

thereof, is misplaced in the context of the probable cause determination. Although the "veracity" and "credibility" of reporting persons is relevant to a probable cause determination,[224] a finding of probable cause "does not demand any showing that such a belief be correct or more likely true than false."[225] Accordingly, in *Davis v. Sexton*, another Section of the Eastern District of Louisiana concluded that credibility issues arising from an informant's criminal history and motive to lie did not negate probable cause where the affidavit included other evidence establishing probable cause.[226] Here, even considering the credibility issues implied by Plaintiff's alleged omissions, the Affidavit contained ample evidence from independent sources to support a finding of probable cause.

Moreover, the Affidavit sufficiently informed the magistrate judge that six Juvenile Justice Center staff members submitted reports describing the incident and denying Plaintiff's use of excessive force and profane language.[227] The Affidavit identifies each of the reporting staff members and their positions.[228] The Affidavit states that "[a]ll of the incident reports described the behavior actions of the involved juvenile detainees [and] restraint actions taken by [Plaintiff]."[229] The Affidavit also states that "[n]one of the reports indicated [Plaintiff] used any excessive force or profane language."[230] As a result of Sergeant Lymous's disclosure of these

---

[224] *See Illinois v. Gates*, 462 U.S. 213, 230 (1983).

[225] *Texas v. Brown*, 460 U.S. 730, 742, 103 S. Ct. 1535, 1543, 75 L. Ed. 2d 502 (1983).

[226] *Davis v. Strain*, No. CV 14-1086, 2016 WL 362511, at *7 (E.D. La. Jan. 29, 2016) (Lemmon, J.), *judgment entered*, 676 F. App'x 285 (5th Cir. 2017).

[227] Rec. Doc. 25-2 at 2.

[228] *Id.*

[229] *Id.*

[230] *Id.*

34

exculpatory incident reports, the magistrate judge was not deprived of information necessary to determine probable cause.

Third, the alleged omission of the fact that Sexton's medical records did not include that Plaintiff "squeezed [Sexton's] penis approximately six times" does not undermine a finding of probable cause.[231] According to the Affidavit, Sexton's medical records indicated that Sexton suffered a concussion.[232] Nothing in the Affidavit or Amended Complaint indicates that Sexton was examined for any other injuries or sexual assault.[233] Moreover, Plaintiff does not allege that Sexton's medical records stated that Plaintiff *did not* grab or squeeze Sexton's penis; rather, Plaintiff merely alleges that the medical records "showed that Mr. Sexton did not complain that [Plaintiff] grabbed or squeezed his penis."[234] As a result, inclusion of this alleged omission would have little, if any, bearing on the probable cause determination.

Finally, Plaintiff's allegation that Sergeant Lymous omitted from the Affidavit facts Sergeant Lymous learned from the video and medical records that "showed beyond doubt that Mr. Sexton's accusations were false"[235] does not adversely affect probable cause. Plaintiff fails to identify any specific facts or state how such facts would "show beyond doubt" that Sexton's accusations were false in light of the totality of the evidence presented in the Affidavit. Accordingly, Plaintiff fails to allege that had the omitted information been made known, it would have adversely affected probable cause.

---

[231] Rec. Doc. 23 at 10.

[232] Rec. Doc. 25-2 at 2.

[233] *See generally* Rec. Doc. 23; Rec. Doc. 25-2.

[234] Rec. Doc. 23 at 10.

[235] *Id.* at 12–13.

In sum, even accepting as true Plaintiff's allegations regarding the omissions and false statement contained in the Affidavit, Sergeant Lymous's Affidavit was not "so lacking in indicia of probable cause so as to render official belief in its existence unreasonable."[236] Accordingly, the Court finds that Plaintiff fails to state a claim that he was falsely arrested in violation of the Fourth Amendment for second-degree cruelty to a juvenile in connection with Sexton.

### 2.   Whether probable cause would have existed for simple battery

Based on the Affidavit submitted by Sergeant Lymous, the magistrate judge found probable cause to arrest Plaintiff for simple battery in connection with HT in violation of La. Rev. Stat. § 14:35.[237] "Simple battery is a battery committed without the consent of the victim."[238] The Affidavit provides the following account of the incident involving HT.

In the Affidavit, Sergeant Lymous certified under oath that on August 26, 2018, NOPD was dispatched to the Juvenile Justice Center to investigate claims of physical abuse.[239] There, a NOPD detective learned that four detainees, including HT, reported to the Juvenile Justice Center administration that they were being abused by Plaintiff.[240] Sergeant Lymous attested that incident reports revealed that Plaintiff had implemented restraints on HT, causing him to suffer "a contusion upon the head."[241] According to the Affidavit, the incident reports also described Plaintiff's use of an "upper torso" maneuver, which Sergeant Lymous "learned was a restraint

---

[236] *Malley v. Briggs*, 106 S. Ct. 1092, 1095 (1986).

[237] Rec. Doc. 23 at 13.

[238] La. Rev. Stat. § 14:35.

[239] Rec. Doc. 25-2 at 1.

[240] *Id.*

[241] *Id.* at 2.

technique . . . [that causes] the detainee's [sic] arms to be pulled backwards and pinned behind him. This restraint technique prevents the detainee's [sic] use of his arms."[242]

According to the Affidavit, the next day, Sergeant Lymous observed independent forensic interviews with the complainants.[243] Sergeant Lymous attested that during HT's interview, HT stated that on August 25, 2018, he had engaged in a fight with another detainee, CH, after which he was escorted to his cell.[244] HT said that he "stood on the bed and yelled profanities because he was upset."[245] Sergeant Lymous attested that HT told the interviewer that Plaintiff then "entered the cell, removed his watch and handed it to another corrections officer," "grabbed [HT] from the rear and forced [HT] down to the bed," and "positioned his elbow across [HT's] neck, and repeatedly forearmed [HT] upon the side of his head and ear."[246] According to the Affidavit, HT said that Plaintiff told HT to "stop before I f**k you up" and "I'm going to f**k over you."[247] HT told the interviewer that after HT was shackled, Plaintiff "struck him again."[248] Following the incident, Sergeant Lymous attested that HT said during the interview that he told staff members that he was experiencing "pain to his head and ear" and heard "a whistling sound from his ear."[249]

In the Affidavit, Sergeant Lymous stated that when he viewed video footage from the Juvenile Justice Center, he observed that Plaintiff escorting HT to his room "with his arms pinned

---

[242] *Id.*

[243] *Id.*

[244] *Id.* at 3.

[245] *Id.*

[246] *Id.*

[247] *Id.*

[248] *Id.*

[249] *Id.*

behind his back."[250] Sergeant Lymous attested that he observed Plaintiff entering the cell "holding on to HT" while the other correctional officers stood in the doorway."[251] Sergeant Lymous noted in the Affidavit that there was no video footage available from inside the cell, but he observed Plaintiff exiting the cell and securing the door.[252]

Sergeant Lymous certified under oath in the Affidavit that HT was treated by the Juvenile Justice Center's medical staff.[253] Sergeant Lymous further certified under oath that he observed swelling to the side of HT's head and ear.[254]

Plaintiff contends that the Affidavit omitted "substantial information" that exculpates Plaintiff from the crime of simple battery inflicted upon HT.[255] Specifically, Plaintiff alleges that Sergeant Lymous withheld the following exculpatory information: (1) the source of HT's alleged injuries were a fight with another detainee, CH, rather than Plaintiff; (2) HT had an extensive criminal and violent history; (3) the three detainees were "criminal associates" of one another; (4) Plaintiff was a witness against HT for his previously attempted escape, as well as violence HT inflicted and attempted to inflict on others; and (5) Plaintiff and the other staff members had neither criminal nor violent histories.[256] Plaintiff contends that the alleged omissions "speak volumes about [the] difference between the veracity and reliability of HT compared to the

---

[250] *Id.*

[251] *Id.*

[252] *Id.*

[253] *Id.*

[254] *Id.*

[255] Rec. Doc. 23 at 12.

[256] *Id.* at 12–13.

numerous witnesses that said [Plaintiff] did nothing wrong."[257]

Like in the case of Sexton, Plaintiff's attempts to cast doubt on HT's credibility fail to overcome the magistrate judge's finding of probable cause in this case. Notably, as discussed above, the Affidavit identified the six Juvenile Justice Center staff members who submitted incident reports and stated that "[n]one of the reports indicated [Plaintiff] used any excessive force or profane language."[258]

Additionally, the Affidavit does in fact state that on August 25, 2018, HT engaged in a fight with CH.[259] While the Affidavit does not attribute HT's injuries to CH, it also does not attribute HT's injuries to Plaintiff.[260] Rather, the Affidavit merely documents what Sergeant Lymous observed during his investigation. By asserting that Sergeant Lymous omitted that the fight with CH caused HT's injuries, Plaintiff inappropriately suggests that Sergeant Lymous should have made a medical determination of causation in his Affidavit.

In sum, even accepting as true Plaintiff's allegations regarding the omissions and false statement contained in the Affidavit, Sergeant Lymous's Affidavit was not arguably "so lacking in indicia of probable cause so as to render official belief in its existence unreasonable."[261] Therefore, the Court finds that Plaintiff fails to state a claim that he was falsely arrested in violation of the Fourth Amendment for simple battery in connection with HT.

---

[257] Rec. Doc. 26 at 11.

[258] Rec. Doc. 25-2 at 2; *see* discussion *supra* Part IV.A.1.

[259] Rec. Doc. 25-2 at 3.

[260] *See generally* Rec. Doc. 25-2.

[261] *Malley*, 106 S. Ct. at 1095.

### 3.    Whether probable cause would have existed for malfeasance in office

Based on the Affidavit submitted by Sergeant Lymous, the magistrate judge found probable cause to arrest Plaintiff for malfeasance in office in connection with no particular detainee in violation of La. Rev. Stat. § 14:134.[262] La. Rev. Stat. § 14:134 provides:

> A. Malfeasance in office is committed when any public officer or public employee shall:
>
> (1) Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee; or
>
> (2) Intentionally perform any such duty in an unlawful manner; or
>
> (3) Knowingly permit any other public officer or public employee, under his authority, to intentionally refuse or fail to perform any duty lawfully required of him, or to perform any such duty in an unlawful manner.[263]

The Affidavit provides a detailed account of Sergeant Lymous's review of multiple sources in connection with the three separate incidents that occurred at the Juvenile Justice Center on August 25, 2018, including incident reports, forensic interviews, medical reports, video footage, and his observations of the complainants' injuries.[264] The Affidavit catalogs Plaintiff's alleged conduct towards the three minors, including his use of various restraint techniques, profane language, and physical abuse.[265]

Plaintiff again argues that had Sergeant Lymous included omitted information regarding the various witnesses' credibility, the magistrate judge would have found probable cause

---

[262] Rec. Doc. 23 at 13.

[263] La. Rev. Stat. § 14:134.

[264] *See generally* Rec. Doc. 25-2.

[265] *Id.*

lacking.[266] Once again, the Court finds that even considering the alleged omissions, Sergeant Lymous's Affidavit was not arguably "so lacking in indicia of probable cause so as to render official belief in its existence unreasonable."[267] Accordingly, the Court finds that Plaintiff fails to state a claim that he was falsely arrested in violation of the Fourth Amendment for malfeasance in office.

### 4.    Conclusion

Drawing all reasonable inferences in favor of Plaintiff, Plaintiff fails to demonstrate that probable cause was lacking for any of the three crimes for which he was arrested or for any other crime. Therefore, the Court finds that Plaintiff fails to state a claim for false arrest in violation of the Fourth Amendment. Accordingly, the Court grants Defendants' motion to dismiss the § 1983 claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

### B.    *Whether Sergeant Lymous Is Entitled to Qualified Immunity*

Because Plaintiff fails to adequately plead a Fourth Amendment violation to survive Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court need not address whether Sergeant Lymous is entitled to qualified immunity on the same claim. However, the Court notes that by failing to state a Fourth Amendment claim, Plaintiff also fails to meet his burden of negating the first prong of the qualified immunity inquiry.[268] This is especially true in light of the Supreme Court's holding that even law enforcement officials who "reasonably but mistakenly conclude that probable cause is present" are entitled to qualified immunity.[269] Consequently, the Court need not determine whether Sergeant Lymous's conduct

---

[266] Rec. Doc. 26 at 12.

[267] *Malley*, 106 S. Ct. at 1095.

[268] *See Anderson v. Creighton,* 483 U.S. 635, 640 (1987).

[269] *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (quoting *Anderson,* 483

was objectively reasonable in light of clearly established law.[270]

**C.      Whether the Court will Exercise Supplemental Jurisdiction over Plaintiff's State Law Claims**

As the Court has dismissed Plaintiff's only federal law claim, it will now address whether it is appropriate to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.[271] Defendants contend that the Court should decline to exercise supplemental jurisdiction over any remaining state law tort claims.[272] Plaintiff does not directly address whether the Court should exercise supplemental jurisdiction over any remaining state law claims.[273]

28 U.S.C. § 1367(c)(3) specifically grants a district court the discretion to retain or decline supplemental jurisdiction once it has dismissed all claims over which it has original jurisdiction, such as Plaintiff's § 1983 claim.[274] "As a general rule, a federal court should decline to exercise jurisdiction over pendent state claims when all federal claims are disposed of prior to trial."[275] The Fifth Circuit has stated that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to

---

U.S. at 641, 107 S.Ct. 3034); *see also Babb v. Dorman,* 33 F.3d 472, 477 (5th Cir.1994).

[270] *Saucier,* 533 U.S. at 201–02.

[271] Rec. Doc. 23.

[272] *Id.*

[273] *See* Rec. Doc. 26.

[274] 28 U.S.C. § 1367(c)(3).

[275] *Brim v. ExxonMobil Pipeline Co.,* 213 F. App'x 303, 305 (5th Cir. 2007) (citing *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)). *See also Parker & Parsley,* 972 F.2d at 585 ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed") (citing *Wong v. Stripling,* 881 F.2d 200, 204 (5th Cir. 1989)).

exercise jurisdiction over the remaining state-law claims."[276]

In this case, the balance of factors weighs towards declining to exercise supplemental jurisdiction. First, judicial economy is best served by declining to exercise jurisdiction, as this litigation was only filed in this Court on August 25, 2019, and is still at a relatively early stage.[277] Second, the convenience factor weighs in favor of declining to exercise jurisdiction, because the parties will not have to perform any redundant or particularly burdensome work in order to litigate in state court.[278] Third, federalism and comity concerns also point toward Plaintiff's state law claims being litigated in state court. The federal courts are courts of limited jurisdiction, and state courts often have superior familiarity with their jurisdictions' laws.[279] Finally, the fairness factor concerns the prejudice to the parties that would arise from litigating the matter in state court.[280] Here, the statute of limitations on Plaintiff's state law claims remains tolled while the case is pending in federal court and for 30 days following dismissal.[281] Additionally, neither party would have to repeat the "effort and expense of the discovery process," so this factor also weighs in favor of declining to exercise jurisdiction.[282] Accordingly, the Court declines to exercise supplemental jurisdiction in this case.

---

[276] *Parker & Parsley*, 972 F.2d at 586 (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)) (internal quotations and citations omitted).

[277] *See id.* at 587 (noting that judicial economy would have been better served by dismissal from federal court where discovery had not been completed and the litigation was at a relatively early stage).

[278] *See id.* (finding no undue inconvenience to the parties where little new legal research would be necessary as a result of dismissal and where remaining claims would be governed by state law in either federal or state forum).

[279] *Id.* (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 122 n.32 (1984)).

[280] *Id.* at 588.

[281] *See* 28 U.S.C. § 1367(d); *Artis v. District of Columbia*, 138 S. Ct. 594, 598 (2018).

[282] *Id.* (citing *Waste Sys. v. Clean Land Air Water Corp.*, 683 F.2d 927, 931 (5th Cir. 1982)).

### V. Conclusion

Considering the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants Sergeant Corey Lymous and the City of New Orleans's "Motion to Dismiss"[283] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Johnny Thornton's Fourth Amendment claim brought under 42 U.S.C. § 1983 is **DISMISSED WITH PREJUDICE.** Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE.**

**NEW ORLEANS, LOUISIANA,** this ____25th____ day of September, 2020.


*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[283] Rec. Doc. 25.